245 So.2d 785 (1971)
Elsie F. MYEVRE, Testamentary Executrix and Sole Legatee of Mrs. Estelle Mathe, Widow of William H. Brown
v.
CONTINENTAL CASUALTY COMPANY (also known as the Golden 65 Continental Casualty Company).
No. 4147.
Court of Appeal of Louisiana, Fourth Circuit.
March 8, 1971.
Rehearing Denied April 5, 1971.
Writ Refused May 24, 1971.
*786 Sidney G. Roos, of Roos & Roos, New Orleans, for plaintiff-appellee.
Francis G. Weller, of Deutsch, Kerrigan & Stiles, New Orleans, for defendant-appellant.
Before REDMANN, LEMMON and TAYLOR, JJ.
LEMMON, Judge.
Continental Casualty Company appealed from a judgment awarding hospitalization insurance benefits to Elsie F. Myevre, testamentary executrix and sole legatee of the insured, Mrs. Estelle M. Brown.
Continental issued a "Golden 65" In-Hospital Indemnity Plan policy to Mrs. Brown and concedes that the policy was in effect and all premiums paid during the period in question. Under the policy Continental obligated itself to pay "$70.00 per week, for up to 52 weeks, while hospital confined, from the 1st day of such confinement for injury or sickness." The policy contains a definition of "hospital" which the insured's hospital met. However, the definition has the following exclusionary provision:
"Confinement in a special unit of a hospital used primarily as a nursing, rest or convalescent home shall be deemed confinement in an institution other than a hospital." (Emphasis supplied.)
The sole issue in this case is whether or not the insured was confined during the period in question in a special unit of the hospital used primarily as a nursing, rest or convalescent home.
Mrs. Brown was admitted to Metairie Hospital in November, 1966 and remained there until her death on May 24, 1968. However, she occupied different rooms in the hospital during different periods of her confinement.
Continental paid certain benefits under the policy for the period from June 16, 1967 to September 1967, and for the period from March 28, 1968 until her death on May 24, 1968. However, Continental refused to pay any benefits for the period of December 24, 1967 to March 28, 1968, contending that during this period Mrs. Brown was confined in a nursing unit contained in the hospital building. Apparently, no claim for benefits was made for the period from September through December 23, 1967.
Plaintiff has the burden of showing that her claim is within the general coverage afforded under defendant's Golden 65 policy. Thereafter, Continental has the obligation to prove that plaintiff's *787 claim should be denied because of the policy exclusion. An insurer who bases its defense on an exclusionary clause in the policy must prove the special defense to a legal certainty by a preponderance of the evidence. Givens v. Southern Farm Bureau Casualty Insurance Company, 197 So. 2d 380 (La.App. 2 Cir. 1967); Rachal v. Union National Life Insurance Company, 184 So.2d 775 (La.App. 3 Cir. 1966); B.T. U. Insulators, Inc. v. Maryland Casualty Company, 175 So.2d 899 (La.App. 2 Cir. 1965).
Since the trial judge rendered judgment for the plaintiff, he obviously felt that plaintiff had met her burden of proof and Continental had not. After a careful review of the record, we cannot say this conclusion was manifestly erroneous.
The policy exclusion relied upon is not based on the type of care that a patient receives while confined, but on the location of that confinement in a special unit of the hospital. The rights of the litigants must be decided by the terms of the exclusion and by the proof offered in support of the policy defense. In this case the proof was insufficient that Room 60-A was located in a special unit of the hospital.
Mrs. Brown was in Room 60-A from at least[1] September 24, 1967 through April 30, 1968, at which time the doctor's orders reveal that she "may be rolled in bed to Room 49." She therefore continuously occupied the same room before, during and after the contested period.
From a letter by the claims manager it appears that Continental chose March 28, 1968 as the date to reinstate benefits, because the daily room rate changed on that day from $17.00 to $28.00. Continental believed that Mrs. Brown was transferred on that day from the special unit to the hospital section. Although testimony indicated that the "hospital charge" was more than the "extended care" charge for a room, the record is conclusive that Mrs. Brown remained in the same room before and after the rate change of March 28. Therefore, the rate changes on December 24 and March 28 have no probative value as to the crucial issue of the location of the room.
The seemingly simple proof of confinement in a special unit was inordinately complicated by the testimony of the hospital administrator, who used the terms "extended care, nursing home, geriatrics section, medicare and private patient" so loosely that it was almost necessary to ask for a definition of terms as each question was answered. Apparently, these terms and other similar ones were used at the hospital primarily to indicate the source from which payment was received. For example, the hospital administrator made the following statements in different sections of his testimony:
"geriatrics only referred to the source of payment";
"extended care unit per se is not a nursing home facility";
"geriatrics division was the same as extended care";
"general hospital care at that time was geriatrics";
"extended care is the extension of nursing care";
"A. On March 28, she went to the general hospital under the medicare, in which she was using her lifetime reserve days.
"Q. What was she discharged from?
*788 "A. The private."
"we are licensed for 29 beds under extended care provision (of medicare)."
When Mrs. Brown was "discharged" from one section of the hospital to another on various dates referred to in the testimony, the discharge was obviously only a book-keeping entry made by the hospital accounting department. She did not change to another room or even to another bed.
Besides being licensed as a hospital, Metairie Hospital was licensed as a nursing home by the State of Louisiana and as an extended care facility by the United States Department of Health, Education and Welfare. While it can be presumed that Metairie Hospital therefore had a special unit[2] used primarily as a nursing, rest or convalescent home, it cannot be presumed that Room 60-A is located in this special unit.
Continental offered a Medicare Supervisor as a witness to explain the purposes and services of an extended care facility under Medicare. The trial judge's exclusion of this evidence did not prejudice Continental. The evidence lacking in this case is not on the Medicare program but on the location of Room 60-A in a special unit of the hospital.
Nowhere in the record does the administrator or anyone else state that Room 60-A is in a special unit of the hospital used primarily as a nursing, rest or convalescent home, nor is there any other evidence in the record to this effect.
Accordingly, the judgment of the trial court is affirmed, defendant to pay all costs.
Affirmed.
NOTES
[1] The medical records are incomplete, particularly before and after the contested period.
[2] A special unit is in fact required by 42 USC 1395x(j), under which the hospital was licensed as an extended care facility.