**U. S. INDUSTRIES, INC., Wyatt Industries, Inc., and Steel Tank Construction Co., Plaintiffs-Appellants,**

v.

**AETNA CASUALTY & SURETY COMPANY, et al., Defendants-Appellees.**

No. 82–3079
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 1, 1982.
Rehearing Denied Dec. 1, 1982.

**460**

Hammett, Leake & Hammett, Robert E. Leake, Jr., New Orleans, La., for plaintiffs-appellants.

Bienvenu, Foster, Ryan & O'Bannon, Ernest L. O'Bannon, New Orleans, La., for defendants-appellees.

Before GEE, RANDALL, and TATE, Circuit Judges.

TATE, Circuit Judge:

In this Louisiana diversity case, the plaintiffs ("Wyatt") [1] appeal from a directed verdict in favor of the defendant insurers ("Aetna"),[2] who had issued a builder's "all risks" policy. At the close of Wyatt's case presented before the jury, the district court granted Aetna's motion for directed verdict, upholding Aetna's contention that Wyatt's own evidence unequivocally showed that the damages sought by Wyatt were excluded from coverage under a "faulty workmanship" clause.

Wyatt appeals, contending that the district court erred (a) in finding that the exclusion clause applied to the damages sought and (b) at any rate, in granting a directed verdict at the close of the *plaintiff*'s case, when the *defendant* had the burden of proving the exclusion. We affirm, finding that the evidence unequivocally demonstrated lack of coverage under the clause, as properly construed by the district court.

*The Facts*

The plaintiff Wyatt had contracted to fabricate and erect a steel cylindrical tower, 240 feet high and 15 feet in diameter (called a C2 Splitter).[3] The defendant Aetna had issued a policy protecting Wyatt from "all risks of physical loss or damage" to its property involved in the construction contract, except for certain specified exclusions —pertinently, here, loss or damage "caused by or resulting from . . . faulty workmanship."

Wyatt seeks some nine hundred thousand dollars damages, the cost of materials and labor used to replace the tower when it became deformed in the process of construction. The issue will be whether the cause of this damage-causing deformation was "faulty workmanship" within the meaning of the policy or was instead in the nature of a (covered) fortuitous occurrence, even if resulting from negligence on the part of Wyatt's employees.

The uncontradicted testimony of the sole witness, Wyatt's president, shows:

The construction of the giant tower involved a number of steps. First, Wyatt fabricated semi-circular steel plates some two inches thick. These were then welded into twenty-one rings. The rings were placed on top of one another to the height of the tower. Prior to the damage that subsequently resulted, this portion of the tower-construction was successfully completed.

---

1. We will refer in the opinion to the three plaintiffs (U.S. Industries, Inc., Wyatt Industries, Inc., and Steel Tank Construction Co.) as "Wyatt" in the singular.

   Wyatt Industries, Inc. is now the wholly-owned subsidiary of U.S. Industries (USI). Before the events leading to this litigation, it was the Texas division of USI. Steel Tank Construction Co. was a wholly-owned subsidiary of USI, but after USI had incorporated Wyatt Industries, USI transferred ownership of Steel Tank to Wyatt Industries.

2. The defendant insurance companies are Aetna Casualty & Surety Co., Aetna Insurance Co. and Travelers Indemnity Co., Employers Surplus Lines Insurance Co., Lexington Insurance Co. and American Home Assurance Co.

3. USI's Wyatt Texas Division fabricated the materials of the splitter and subcontracted the actual erection of the tower to Steel Tank, USI's wholly-owned subsidiary. For convenience's sake, both operations will be described under the name Wyatt.

However, this initial welding results in stresses in the plates from the cooling of the molten plate after welding. Consequently, a stress-relieving or post-weld heat-treatment operation is always necessary when plates of the present thickness are involved, in order to complete the construction and to have the completed tower meet the construction-code specifications. Essentially, the process involves heating the metal skin to a certain range of temperature (here, between 1100–1200 degrees) uniformly and to hold that the temperature stabilized for a certain period of time (here, about two and a half hours).

If the temperature becomes too high or is maintained for too long a period, the metal deteriorates. Here, as is not disputed, some excessive heating occurred, and the tower developed a wrinkle and commenced to lean. Eventually, it had to be dismantled and was successfully rebuilt—and the costs of doing so are what the plaintiff Wyatt seeks to recover.

Wyatt's testimony unequivocally shows that the excessive and uneven heating that caused deformation of the initial tower was due to certain factors, all within Wyatt's control and all of which were remedied on the second construction of the tower. These included: the thermocouples (attachments to the skin used to monitor the heat at various places) were improperly placed with regard to that tower so as to monitor the uniformity of the temperature; the burner used to inject hot air and gas into the interior tube of the tower to heat it, was installed so as to heat some portions of it much faster than other portions; the temperature was permitted to reach 1400 degrees on at least one portion of the skin, to the knowledge of Wyatt's foreman, although it was not supposed to exceed 1200 degrees.

Wyatt had previously used the same stress-relieving technique in the construction of towers of similar size; however, they were of some differing design, in that the diameter of the present tower was not uniform from bottom to top. Wyatt does not contest that misjudgments and even negligence on the part of its employees caused the excess heating in the stress-relieving process used on the present tower, partially because techniques previously used were not suitable to the different characteristics of this tower.

The thrust of Wyatt's argument is that the tower itself has been successfully constructed and that these misjudgments and negligent acts in the stress-relieving process that caused the *subsequent* damage to the tower, were in the nature of a fortuitous event extraneous to the construction process, so as not to be within the faulty workmanship exclusion clause.

Aetna's position, which the district court upheld, is that the stress-relieving operation was an integral part of the fabrication and construction of the tower, so that defective procedures were as much faulty workmanship as would have been a defective welding of the tower itself.

*The Builder's "All Risks" Policy and the "Faulty Workmanship" Exclusion*

■ Aetna's policy insured Wyatt's property, including all materials, equipment and machinery used in the construction, "[a]gainst all risks of physical loss or damage from any cause howsoever and wheresoever occurring." The general purposes of this type of policy, as summarized by us in *Dow Chemical Company v. Royal Indemnity Co.,* 635 F.2d 379, 387 (5th Cir. 1981), are:

> A policy of insurance insuring against "all risks" creates a special type of coverage that extends to risks not usually covered under other insurance; recovery under an all-risk policy will be allowed for all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage.

*See also Walter v. Travelers Indemnity Co.,* 289 So.2d 864, 868 n. 2 (La.App.1974). In *Morrison Grain Co., Inc. v. Utica Mutual Ins. Co.,* 632 F.2d 424, 431 (5th Cir. 1980), in upholding coverage under an all risks policy, we noted that " '[a] fortuitous event is an event which so far as the parties to the contract are aware, is dependent on chance,' " and that "a loss may be fortui-

tous even if it is occasioned by the negligence of the insured."

The insurer Aetna here, however, relies upon a specific clause excluding coverage for "[l]oss or damage caused by or resulting from faulty workmanship."[4] Two of the decisions relied upon by the plaintiff Wyatt (both of which rejected exclusion under the clause), shed some light on the meaning and apparent intent of the "faulty workmanship" exclusion in a builder's all risks policy: "A defect in workmanship is a defect in the way some part of the [insured property] is constructed," *Equitable Fire and Marine Insurance Company v. Allied Steel Construction Co.,* 421 F.2d 512, 514 (10th Cir. 1970); the clause excludes coverage for damages "resulting from defects in the product caused by faults in the construction process. . . . It is the quality of the product which is excluded from coverage, and not damage to the product caused by negligence during the construction process." *City of Barre v. New Hampshire Insurance Co.,* 136 Vt. 484, 396 A.2d 121, 122–23 (1978).

Thus, Aetna does not dispute that fortuitous damage to construction property extraneous to the construction of the product itself (here, the tower), occasioned by negligence of the insured's employees, is not excluded from coverage by the "faulty workmanship" clause in an all risks policy—such as, for example, if one of the insured's employees negligently ran a truck into the tower under construction and caused it to turn over. Here, however—Aetna contends, correctly in our opinion—the defective *workmanship* in the stress-relieving process (whether due to negligence, inadvertence, misjudgment, or whatnot) that caused the tower to become deformed, while it was in the course of construction, occurred during and before the completion of the tower as an integral part of the (faulty) workmanship in its construction. The defects of construction were as much "faulty workmanship" in the tower's construction as would have been defective welding in the initial stages of its construction, which concededly, *cf., Dow Chemical, supra,* 635 F.2d at 387–88, falls within the exclusion clause.

The insured, Wyatt, argues that the "faulty workmanship" exclusion applies to defects actually built into the structure, but not to misjudgments or to negligent or ineffective procedures in doing the work that themselves do not become part of the completed product.

In this argument, Wyatt relies upon *Equitable* and *City of Barre,* cited above. While some language in these decisions does support Wyatt's contention, such language must be viewed in the context of the facts presented to those courts for decision. In *Equitable,* a pipeline fell into the river across which it was being constructed, because a workman had replaced a fitting at one pier without first securing the pipe at another pier. In *City of Barre,* wooden arches blew down because the insured contractor had installed only two guy wires, where six were required by the plans. Although errors in workmanship contributed in the causation, the loss or damage in each case essentially resulted fortuitously from events extraneous to the construction process itself—the fall into the river (*Equitable*), the gusting of the wind from twelve knots to thirty (*City of Barre*).

---

**4.** The exclusion itself is limited. It excludes loss or damage resulting from "faulty workmanship but *not excluding resultant physical loss or damage to other property insured hereunder"* (emphasis added). In a subsidiary argument, Wyatt relies upon the italicized argument in contending (a) that the damage to the initially constructed (but not stress-relieved) tower was damage to "other" property insured—*i.e.,* that faulty workmanship in the stress-relieving using some insured equipment and property did not fall within the "faulty workmanship" exclusion, since it injured "other" property, and (b) that, at any rate, the provision is ambiguous so that under well settled principles the ambiguity should be resolved against the insurer. The short answer is that, as held in the body of the opinion, the stress-relieving was as much an integral part of the construction of the tower as was the initial fabrication and welding. Thus, faulty workmanship in the stress-relieving portion of the construction of the tower, was as much "faulty workmanship" as would have been the concededly excluded defective welding in the initial phases of construction.

Here, unlike in *Equitable* and *City of Barre,* the damages are excluded from coverage, because the faulty workmanship comprehends "a defect in the way some part of the [insured property—here, the tower] is constructed," *Equitable, supra,* 421 F.2d at 514, and excludes damage "resulting from defects in the product [*i.e.,* the tower] caused by faults in the construction process," *City of Barre, supra,* 396 A.2d at 122.

### The Directed Verdict

To a large extent, Wyatt's argument as to the impropriety of a directed verdict at the close of its case depends upon its contentions as to the proper construction of the faulty-workmanship exclusion clause or as to its ambiguity (see note 4), which we have rejected above. As Wyatt's able counsel stated, in arguing against directed motion to the district court, a directed verdict would be appropriate "if it is clear beyond question, and if there is no issue left in the plaintiff's case but that the loss is caused by an excluded risk." R. 76. In arguing against directed verdict, counsel relied solely upon Wyatt's construction of the exclusion clause, R. 76–83, and the only potential rebuttal evidence to which he adverted before the trial court seems to be that allegedly non-excluded "negligent construction" practices, R. 80, rather than defective workmanship on the tower itself, may have caused or contributed to the defect—a construction of the exclusion clause that we have above rejected.

Wyatt essentially contends that it presented a prima facie case of coverage under the builder's all risk policy, thus shifting the burden of proof, like an affirmative defense, to the insurer to present evidence that the loss was within a policy exclusion. *See Myevre v. Continental Casualty Co.,* 245 So.2d 785, 786–87 (La.App. 1971). Wyatt claims that a directed verdict before the insurer offers evidence asserting the exclusion is improper.

■ The standard of review for motions for directed verdict under Fed.R.Civ.P. 50 are the same for a trial court and an appellate court, *see Alman Bros. Farms & Feed Mill, Inc. v. Diamond Laboratories, Inc.,* 437 F.2d 1295, 1298 (5th Cir. 1971). The evidence and all inferences therefore must be reviewed in the light most favorable to the party against whom the motion is offered. *Boeing Co. v. Shipman,* 411 F.2d 365, 374–75 (5th Cir. 1969) (en banc). While direction in favor of the party having the burden of proof is rarely granted, it is permitted where that party "has established his case by testimony that the jury is not at liberty to disbelieve." 9 Wright & Miller, Federal Practice & Procedure ¶ 2535 at 591 (1971). *See Allen v. Seacoast Products, Inc.,* 623 F.2d 355, 360 n. 9 (5th Cir. 1980).

■ At the close of Wyatt's case, the district court was presented a set of undisputed facts. No ambiguities existed as to the credibility of the sole witness, Wyatt's president, or as to facts needed to prove the exclusion. The decision as to whether the exclusion for faulty workmanship applied to this fact situation became a question of law. After the plaintiffs set forth a prima facie case of loss and coverage under the general provisions of the policy, the insurer Aetna did have the burden of proving that the risk was expressly excluded by a policy clause. However, here, where Wyatt's own evidence also overwhelmingly and unequivocally proved the conditions for exclusion of coverage, the defendant was not required to present further evidence after the plaintiff rested.

### Conclusion

At the close of the plaintiff Wyatt's evidence, the district court did not err in granting Aetna's motion for a directed verdict. No reasonable jury could have failed to find that the insurance policy exclusion applied, since "faulty workmanship" includes the defective handling of a heat treatment that is an integral part of the construction process of the insured property. We therefore AFFIRM the judgment of the district court.

AFFIRMED.