**KROLL CONSTRUCTION COMPANY,**
**Plaintiff,**

**v.**

**GREAT AMERICAN INSURANCE**
**COMPANY, Defendant.**

**Civ. A. No. C83–1439A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 27, 1984.

David G. Russell and Gregory R. Crocket, Kutak, Rock & Huie, Atlanta, Ga., for plaintiff.

Kenneth A. Hindman and Clayton H. Farnham, Drew, Eckl & Farnham, Atlanta, Ga., for defendant.

### ORDER

ROBERT H. HALL, District Judge.

Presently pending in this breach of contract action are defendant's motion for summary judgment and plaintiff's motion

for partial summary judgment. Jurisdiction exists pursuant to 28 U.S.C. § 1332.

**FACTS**

The material facts in this action are undisputed:

Plaintiff Kroll Construction Company ("Kroll") was the general contractor for the construction of an office condominium project ("the project"), insured under a builder's risk policy (policy no. UAP 325–92–75) issued by defendant Great American Insurance Company ("Great American"). The insurance policy insured against property damage up to $20,941 and against "all risk of direct physical loss or damage to the [project] from any external cause except as otherwise provided" up to $2,820,-000.00. (Exhibit A to defendant's motion, p. 3, ¶ D).

One exception to the builder's risk coverage was for "[t]he cost of making good any faulty or defective workmanship or material...." (Exhibit A to defendant's motion, p. 4, ¶ F.5). Distinct from this excepted loss, and thus covered by the policy, was "physical damage directly resulting from such faulty or defective workmanship or material." (*Id.*)

One exception to the property damage coverage was for property damage to "property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control...." (Exhibit A to defendant's motion, p. 6, ¶ (f)(3)).

After the project was essentially completed, Kroll discovered that the waterproofing materials and/or work furnished by a subcontractor were deficient in several respects and ultimately expended in excess of $490,000.00 in correcting the subcontractor's work and materials and in replacing or repairing much of the landscaping, concrete work, irrigation system and electrical system which were damaged by the corrective work itself. (Exhibit M to defendant's motion). Kroll filed a timely claim with Great American for these losses. Great American denied builder's risk coverage of Kroll's losses, one reason being that the losses constituted "the cost of making good any faulty or defective workmanship or material" and thus were excepted from coverage.[1] Great American denied property damage coverage of the losses on the ground that they were also exempted because the property was in Kroll's control at the time of the damage.

Kroll brings this action for breach of contract seeking to recover these losses.

Additional facts will be disclosed as necessary below.

**DISCUSSION**

A. *"All Risks" Coverage*

Great American moves for summary judgment on the ground that there is no genuine dispute that the "all risks" policy in question excludes coverage of the expenses claimed by plaintiff. Kroll opposes Great American's motion and brings its own motion for partial summary judgment seeking a ruling that the "all risks" policy issued by Great American covers the losses caused by the subcontractor.

The cross-motions present three questions of interpretation for the court:

(1) Does the "all risks" policy in question exclude coverage of the cost of making good faulty or defective workmanship or material of a third-party subcontractor (or just that of the insured general contractor)?

(2) Are the losses incurred by Kroll the result of "faulty or defective workmanship or material"?

(3) Does the cost of repairing the damages caused by the corrective work fall within "the cost of making good" the faulty or defective workmanship or material?

1. *Faulty or defective workmanship or material of subcontractor*

The court is confronted with the initial question of whether the policy exclusion at

---

1. Great American also contended that Kroll's losses were excepted from builder's risk coverage under other policy exceptions. Summary judgment is not sought as to these exceptions, however, so they are not discussed.

issue excludes from coverage the cost of making good a subcontractor's faulty or defective workmanship or material. Plaintiff argues strenuously that to interpret the "cost of making good" provision to exclude fortuitous losses caused by subcontractor fault would amount to construing the "all risks" policy as a "no risk" policy. Plaintiff maintains that it reasonably expected to be protected for subcontractor-fault losses because of the "all risk" nature of the policy, and suggests that Great American, as the drafter of the insurance policy, had the duty to *specifically* exclude from coverage losses resulting from the faulty or defective work of subcontractors.

Plaintiff relies primarily on the former Fifth Circuit's decision in *Dow Chemical Co. v. Royal Indemnity Co.*, 635 F.2d 379 (5th Cir.1981). In *Dow Chemical*, the court interpreted a provision in an "all risks" builder's policy which excluded "faulty workmanship ... when attributable to or performed by the insured or any person ... in the employment or service of the insured." The court held that a subcontractor was not in the "service of the insured" within the meaning of the policy language such that the faulty workmanship of the subcontractor was not an excluded peril from coverage. *Id.* at 387. The court found the exclusion language ambiguous in light of other policy-exclusion language and thus looked to the general purpose of the "all risks" policy for guidance in interpreting the exclusion:

> [T]he general purpose of the "all risks" builder's policy ... is ... to insure against all fortuitous losses not caused by the insured's own misconduct or fraud. In purchasing such a policy, a general contractor would contemplate that most, if not all, of the work on the construction project would be accomplished by subcontractors.... As was recently stated by this court with regard to interpretation of an "all risks" policy: "[A]s a reviewing Court we must view each contract in the light of the setting of the parties and their reasonable expectations as to risks and protection against them, and an insurance policy in such a

way as to effectuate its purpose." *Morrison Grain Co., Inc. v. Utica Mutual Ins. Co.*, 632 F.2d [424, 429 (5th Cir. 1980) ]. It is reasonable to assume that a primary purpose of purchase of an "all risks" policy by an insured would be to protect against fortuitous loss through fault of the subcontractors through whom the work was done; if subcontractor-fault were entirely excluded as a covered peril, the "all risks" peril expressly insured would become perilously close to a policy insuring no risk.

*Id.*

Plaintiff suggests that the former Fifth Circuit strained to find "service of the insured" ambiguous (because a subcontractor "serves" under a general contractor) and urges the court to similarly find "any faulty or defective workmanship" ambiguous and strictly construe the exclusion against Great American in light of the purpose of the "all risks" policy. (Plaintiff's brief in support of motion for partial summary judgment, p. 7).

■ The court declines to find the phrase at issue ambiguous. The "all risks" policy excluded the cost of making good "any" faulty or defective workmanship; the breadth of the word "any" prevents the court from finding that a subcontractor's workmanship does not fall within the exclusion. To state the obvious, "any" means "all." The court rejects plaintiff's contention that this meaning was "hidden and secret" as well as its suggestion that "any" is an imprecise term. The "all risks" policy clearly and unambiguously excluded subcontractor-fault losses.

The court finds support in this conclusion by *Dow Chemical*, the case cited by plaintiff. In that case the court noted that if the parties had intended to exclude the faulty workmanship of subcontractors from coverage under the "all risks" policy, they could have simply excluded "faulty workmanship..." without qualification. 635 F.2d at 387. The parties in this case did just that; they did not limit the faulty workmanship exclusion to only the work-

manship attributable to the insured's employees.

It is true that the policy would have been clearer as to subcontractors had it specified that the exclusion applied "regardless of to whom attributable" or that it applied to the workmanship of subcontractors as well as to the workmanship of the general contractor. However, an insurer has no duty to include such specific language where it has included general language to the same effect.

The court finds that plaintiff's expectations, to the extent they were as plaintiff described,[2] were not reasonable in the face of the clear language of the insurance policy. It is irrelevant that plaintiff and another insurer may have construed and applied a similar exclusion to not include subcontractor work;[3] there is nothing to indicate that they were legally required to give the exclusion such a narrow reading.

### 2. Meaning of "faulty or defective workmenship or material"

Having determined that the "cost of making good" exception excludes coverage for the faulty or defective workmanship or materials of a subcontractor, the next question for the court is whether plaintiff's losses are attributable to "faulty or defective workmanship or material" within the meaning of the exclusion.

Plaintiff argues that its losses were caused, not by "faulty or defective workmanship," but by the "negligent failure of [the] subcontractor ... to exercise proper judgment in performing subcontractual work." (Plaintiff's brief in support of motion for pretrial summary judgment, p. 12). Plaintiff cites *Texas Eastern Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 565 (10th Cir. 1978), and *Equitable Fire & Marine Insurance Co. v. Allied Steel Construction Co.*, 421 F.2d 512, 513 (10th Cir.1970), for the proposition that negligence or misjudgment

in construction does not constitute deficiency in workmanship.

The evidence introduced to the court shows that the waterproofing job performed by the subcontractor was inadequate in the following ways: (1) only the top four or five feet of the subsurface walls had been waterproofed, leaving about twelve feet with no waterproofing at all; (2) in some places, there were bubbles in the waterproofing material; (3) in some places, the waterproofing material had wrinkled and slid down the walls. (Watson Deposition, pp. 18, 25–26, 31; Exhibits D–1 and D–2 to Watson Deposition). Although it is unclear from the record, the court assumes that none of the deficiencies were the result of poor judgment on the part of the designers for the subcontractor as both parties appear to implicitly adopt this premise in their arguments.

■ With that assumption made, the court concludes that the deficiencies in question reflect "faulty or defective workmanship or materials" provided by the waterproofing subcontractor. The term "workmanship" is not ambiguous; it simply means "the execution or manner of making or doing something." Webster's Third New International Dictionary, 2635 (4th ed. 1976). "Faulty or defective workmanship," then, means the faulty or defective execution of making or doing something. There is no question that the subcontractor in this case defectively executed its craft of waterproofing, at least with respect to the failure to waterproof the entire subsurface walls. The remaining deficiencies (the bubbles and the wrinkling) resulted either from defective materials supplied by the subcontractor or from defective use of those materials by the workmen.

The court rejects plaintiff's argument that the failure of workmen to exercise proper judgment in executing their skill or craft, or the negligent execution by workmen of their skill, does not constitute

---

**2.** See Estapa Affidavit, ¶ 6; Plaintiff's brief in support of motion for partial summary judgment, p. 3.

**3.** See Kroll Affidavit, ¶¶ 4–5.

faulty or defective workmanship. *See U.S. Industries, Inc. v. Aetna Casualty & Surety Co.*, 690 F.2d 459, 462 (5th Cir.1982) (defective workmanship can be the result of negligence, inadvertence, or misjudgment). To execute a job using poor judgment or negligently is to defectively execute that job. The court declines to follow the cases cited by plaintiff to the extent that they mandate a different conclusion. This court chooses to adopt the plain, ordinary meaning of "faulty or defective workmanship" rather than strain to find that term ambiguous so as to justify a liberal construction in favor of plaintiff, the insured. *National Hills Shopping Center, Inc. v. Liberty Mutual Insurance Co.*, 551 F.2d 655, 658 (5th Cir.1977) (an insurance policy which unambiguously and lawfully limits the insurer's liability cannot be expanded beyond what is fairly its plain terms).

### 3. *Meaning of "cost of making good"*

The final question for the court is whether all of the losses suffered by plaintiff constitute the "cost of making good" the subcontractor's defective workmanship or material. Plaintiff argues that most of its losses were incurred after the waterproofing job was reinstated and thus are not a part of the "cost of making good" the waterproofing defects.[4] Defendant relies on a "but for" analysis, arguing that plaintiff would not have sustained these losses but for the defective waterproofing work of the subcontractor so they should be considered a part of the "cost of making good" the defective work.

 The court agrees with plaintiff that the costs incurred *following* the correction of the waterproofing work do not fall within the narrow meaning of the phrase, "cost of making good any faulty or defective workmanship or materials." The policy-exclusion language did not provide an exception for all losses or damages stemming from faulty workmanship, *see U.S. Industries, Inc. v. Aetna Casualty & Surety Co., supra,* nor did it except the cost of returning a project to its state at the time the defective workmanship was discovered; rather, it simply excepted the cost of making good faulty workmanship or materials, leaving covered the cost incurred after the faulty work was "made good." When an "all risks" builder's policy does not expressly exclude a certain peril, the policy is deemed to cover that peril. *Dow Chemical Co., supra,* 635 F.2d at 386.

### B. *Property Damage Coverage*

As plaintiff does not oppose defendant's motion for summary judgment to the extent it concerns plaintiff's claim under the property damage portion of the insurance policy, the court finds no genuine dispute that defendant is not liable to plaintiff under the property damage coverage.

### CONCLUSION

In sum, the court PARTIALLY GRANTS and PARTIALLY DENIES defendant's motion for summary judgment and PARTIALLY GRANTS and PARTIALLY DENIES plaintiff's motion for partial summary judgment. The effect of this Order is that plaintiff will be allowed to recover under the "all risks" coverage only those costs incurred following the "making good" of the defective waterproofing job done by its subcontractor. The remainder of plaintiff's damages are not recoverable under the insurance contract at issue.

---

**4.** In plaintiff's brief in opposition to defendant's motion for summary judgment (p. 8), plaintiff approximates the total damages at $497,787.31 and the cost of correcting the defective waterproofing at $147,425.68; this leaves approximately $350,361.63 expended after the waterproofing was reinstated.