**L.F. DRISCOLL COMPANY**

v.

**AMERICAN PROTECTION INS. CO.**

**Civil Action No. 95–4641.**

United States District Court,
E.D. Pennsylvania.

April 24, 1996.

Steven A. Arbittier, Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA, for L.F. Driscoll Company.

Terance P. Kennedy, Kelly, McLaughlin & Foster, Philadelphia, PA, Terance P. Kennedy, Law Offices of Terance P. Kennedy, Philadelphia, PA, Matthew D. Freiman, Kemper Ins. Company, Property Litigation, Long Grove, IL, Karen J. McGowan, Kemper Ins. Company, Property Litigation, Long Grove, IL, for American Protection Insurance Company.

Kevin Gerard Amadio, Venzie Phillips & Warshawer, Philadelphia, PA, for Children's Hospital of Philadelphia.

Thomas A. Kuzmick, Rawle & Henderson, Philadelphia, PA, Francis X. Clark, Baldwin, Renner & Clark, Wayne, PA, for Keystone Roofing Company.

## MEMORANDUM

NEWCOMER, District Judge.

Presently before the Court is defendant American Protection Insurance Company's ("AMPICO's") Motion for Summary Judgment, plaintiff L.F. Driscoll Company's ("Driscoll's") response thereto, and AMPICO's reply brief thereto. For the reasons stated below, this Court will grant AMPICO's motion for summary judgment.

*I. Background*

Driscoll brought this breach of contract action against its insurance company, defendant AMPICO. The undisputed facts are as follows. Driscoll is a construction company that contracted to build the Stokes Research Center at the Children's Hospital of Philadelphia ("CHOP"). Driscoll subcontracted out work involving the installation of roofs on the third, sixth and thirteenth floors of the Research Center. All three roofs were completed by December 9, 1994.

During the remaining construction of the Research Center, the roofs incurred damage, causing them to leak. The parties agree that the cause of the damage was the negligence of the subcontractors. AMPICO's Memorandum of Law in Support of Defendant's Motion for Summary Judgment at 8; Driscoll's Memorandum of Law in Response to AMPICO's Motion for Summary Judgment at 2, 4. More specifically, after the roofs had been constructed, the subcontractors, supervised by Driscoll, continued "extensive trade activity," on the rest of the Research Center until March 8, 1995. This "trade activity" included storing materials directly on the roofs and carrying or dragging heavy materials or equipment across the roofs. Driscoll's Response at 4. The parties dispute the extent to which Driscoll protected the roofs or warned its subcontractors to protect the roofs during this time.

CHOP maintained an "all-risk" standard property insurance policy ("the Policy") with defendant AMPICO. On July 1, 1994, CHOP added Driscoll and its subcontractors as additional insureds under the Policy. After discovering that the roofs leaked, CHOP submitted a claim to AMPICO for approximately $350,000 for the damage suffered. AMPICO denied the claim, maintaining that the loss suffered by CHOP was caused by faulty workmanship, which the Policy excluded. Driscoll then filed the present action against AMPICO for breach of insurance contract. AMPICO answered and counterclaimed for a declaratory judgment that AMPICO is not obligated to pay.[1] AMPICO

---

1. AMPICO also filed a third-party complaint, which this Court dismissed, against subcontrac-   tor Keystone Roofing Company.

now moves for summary judgment on its counterclaim. For the reasons that follow, this Court will grant AMPICO's motion.

## II. Legal Standard

A trial court may enter summary judgment if, after review of all evidentiary material in the record, there is no genuine issue as to any material facts, and the moving party is entitled to judgment as a matter of law. *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983); *Bank of America Nat'l Trust and Savings Ass'n v. Hotel Rittenhouse Assoc.*, 595 F.Supp. 800, 802 (E.D.Pa.1984). Where no reasonable resolution of the conflicting evidence and inferences therefrom, when viewed in a light most favorable to the nonmoving party, could result in a judgment for the nonmoving party, the moving party is entitled to summary judgment. *Tose v. First Pennsylvania Bank, N.A.*, 648 F.2d 879, 883 (3d Cir.), *cert. denied* 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981)); *Vines v. Howard*, 676 F.Supp. 608, 610 (E.D.Pa.1987).

The party moving for summary judgment has the burden of proving that there are no genuine issues as to any material fact, and that he is entitled to judgment as a matter of law. *Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3rd Cir.1981); *Cousins v. Yaeger*, 394 F.Supp. 595, 598 (E.D.Pa.1975). The burden then shifts to the non-moving party to present opposing evidentiary material beyond the allegations in the Complaint showing a disputed issue of material fact. *Sunshine Books, Ltd. v. Temple Univ.*, 697 F.2d 90, 96 (3rd Cir.1982); *Goodway Marketing, Inc. v. Faulkner Advertising, Inc.*, 545 F.Supp. 263, 265, 267–68 (E.D.Pa.1982). The non-moving party must present sufficient evidence for a jury to return a verdict favoring that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

## III. Discussion

### A. Issue Presented

AMPICO contends that the loss falls within one of four exclusions to coverage in the Policy. AMPICO's Motion for Summary Judgment thus presents the following issue of interpretation for this Court: whether the loss was "caused by" or "results from" any one of the following exclusions listed in Section C of the Policy:

(1) *Exclusion # 4:* faulty workmanship, material, construction or design; or errors in the development, processing, or manufacture of products; or work being performed upon property and directly attributable thereto; except ensuing loss from a peril not otherwise excluded by this Policy;

(2) *Exclusion # 23:* neglect of the insured to use all reasonable means to save and preserve the property at and after a loss;

(3) *Exclusion # 24:* increase in hazard within the control and knowledge of the insured; and

(4) *Exclusion # 27:* faulty, inadequate or defective:

  a. planning, zoning, development, surveying, siting;

  b. design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

  c. materials used in repair, construction, renovation or remodeling; or

  d. maintenance;

of part or all of any property wherever located.

.    .    .    .    .

Exclusion[ ] 27 appl[ies] only if any other cause or event otherwise excluded by this Policy contributes concurrently or in any sequence to the loss or damage.

For the reasons that follow, this Court determines that the loss falls within Exclusion # 4 of the Policy. It is therefore unnecessary to determine whether any of the other exclusions apply.

### B. Analysis

The Pennsylvania Supreme Court has set forth the standards to be followed in interpreting an insurance contract:

The task of interpreting a policy is generally performed by a court rather than a jury. The goal of the task is, of course, to ascertain the intent of the parties as mani-

fested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.

*Standard Venetian Blind Co. v. Amer. Empire Ins. Co.*, 503 Pa. 300, 304–05, 469 A.2d 563, 566 (1983) (citations omitted). Moreover, all-risk policies should ordinarily be interpreted broadly. *Compagnie des Bauxites v. Ins. Co. of North America*, 724 F.2d 369, 373 (3d Cir.1983). However, where the language of the policy creates a clear exclusion, that language controls. *Rouse Chamberlin, Inc. v. Fidelity and Deposit Co. of Maryland*, 1987 WL 10664 (E.D.Pa. May 8, 1987) (Scirica, J.).

■ This Court agrees with AMPICO that the roof damage falls within the faulty workmanship exclusion (Exclusion # 4) to the Policy. The faulty workmanship exclusion to the Policy excludes coverage for the losses caused by or resulting from the following:

> **faulty workmanship,** material, construction or design; or errors in the development, processing, or manufacture of products; or **work being performed upon property and directly attributable thereto;** except ensuing loss from a peril not otherwise excluded by this Policy;

Exhibit A to AMPICO's Motion for Summary Judgment, Section C, ¶ 4 (emphasis added). In this case, the parties agree that the negligence of the subcontractors during construction of the Research Center caused the damage to the roofs. Driscoll's Response at 4. This Court holds that such negligence falls within Exclusion # 4.

■ This Court finds the phrase "faulty workmanship" to be unambiguous and will rely on its plain, ordinary meaning rather than straining to justify a liberal interpretation of the phrase. *Ryan Homes, Inc. v. Home Indemnity Co.*, 436 Pa.Super. 342, 647 A.2d 939 (1994), *app. denied*, 540 Pa. 621, 657 A.2d 491 (1995). The plain and ordinary meaning of "faulty or defective workmanship" is "the faulty or defective execution of making or doing something." *Kroll Constr. Co. v. Great Amer. Ins. Co.*, 594 F.Supp. 304, 307 (N.D.Ga.1984) (citing Webster's Third New International Dictionary, 2635 (4th ed. 1976) and holding that the phrase "faulty workmanship" is unambiguous). A job that is defectively executed is one that is performed negligently. *Id.* Both parties agree that the subcontractors performed their job negligently; therefore, the damage to the roofs amounts to "faulty workmanship." The fact that the negligence was that of the subcontractors rather than the general contractor is irrelevant.[2] Furthermore, since it is undisputed that the damage to the roofs resulted from "work being performed upon" the Research Center, this Court cannot comprehend how the loss would not fall within Exclusion # 4.[3]

The situation presented in this case is similar to that presented in *U.S. Industries, Inc. v. Aetna Cas. & Surety Co.*, 690 F.2d 459 (5th Cir.1982). In *U.S. Industries*, the plaintiff-insured contracted to build a steel cylindrical tower. The first stage of construction required welding and stacking a number of semi-circular steel rings to the height of the tower. This portion of the construction was successfully completed. The second stage involved a "post-weld-heat treatment operation" to eliminate stresses in the rings after the steel had cooled. During this second stage, the plaintiff-builder excessively heated the metal, causing the tower to lean to one side. The entire tower had to be dismantled and the process repeated. The plaintiff filed a claim with its insurer, and the insurer refused to cover the loss on the ground that the damage was caused by plaintiff's faulty workmanship. The trial judge directed a

---

2. The Policy excludes "faulty workmanship" only. The Policy does not state that the faulty workmanship must have been performed by anyone in particular.

3. Curiously, the parties did not discuss the effect of this language in Exclusion # 4 on the present dispute. Therefore, although a common sense understanding of that language leads to the conclusion that no coverage exists in this case, this Court will not rely solely on that language in deciding AMPICO's motion.

verdict in favor of the insurer, and the Tenth Circuit affirmed. The court noted that

> the defective **workmanship** in the stress-relieving process (**whether due to negligence, inadvertence, misjudgment, or whatnot**) that caused the tower to become deformed, while it was in the course of construction, occurred during and before the completion of the tower as an integral part of the (faulty) workmanship in its construction. The defects of construction were as much "faulty workmanship" in the tower's construction as would have been defective welding in the initial stages of its construction, which concededly, [citation omitted], falls within the exclusion clause.

*Id.* at 462 (emphasis added).

The case at bar is analogous to *U.S. Industries:* Driscoll and/or the subcontractors successfully completed the roofs but negligently damaged the roofs during later stages of the construction of the Research Center. Like the first stage of the welding and stacking of the tower's steel rings in *U.S. Industries,* the successful installation of the roofs was but one stage of the construction of the Research Center. As with the damage stemming from the faulty post-welding heat treatment in *U.S. Industries,* the damage to the roofs in this case occurred before the Research Center had been completed and thus constitutes "workmanship."

Driscoll maintains that two competing definitions of "faulty workmanship" create an ambiguity in that term and that the ambiguity must be construed against AMPICO. Driscoll further argues that application of the more favorable interpretation to the present case creates a factual question which precludes the entry of summary judgment. This Court disagrees and finds that summary judgment in favor of AMPICO is warranted regardless of which definition of "faulty workmanship" this Court adopts.[4]

Pennsylvania courts have not addressed this distinction. The two definitions are as follows. The first definition limits the faulty workmanship exclusion to damage resulting from defects in the finished **product**. *See, e.g., Allstate Ins. Co. v. Smith,* 929 F.2d 447 (9th Cir.1991); *City of Barre v. New Hampshire Ins. Co.,* 136 Vt. 484, 486, 396 A.2d 121, 122 (1978). The second definition interprets the exclusion as also encompassing losses resulting from faulty **process**. *See, e.g., U.S. Industries,* 690 F.2d at 462; *Kroll,* 594 F.Supp. at 307 (" 'Faulty or defective workmanship' . . . means the faulty or defective execution of making or doing something.").

Driscoll argues that this Court should adopt the first definition and that, under this definition, the loss is covered under the Policy. This Court disagrees. No coverage exists under the first definition; the roofs were defective when construction of the product (the Research Center) was complete, rendering the product (the Research Center) flawed. Therefore, the negligence of the subcontractors created a "faulty product." Driscoll argues that, because the roofs had been completely built before the subcontractors damaged the roofs, the roofs were not the "product of faulty workmanship." This Court disagrees. The point during the construction at which the roofs were damaged is irrelevant. CHOP hired Driscoll to build the entire Research Center. Constructing the roofs was only one part of that task. It is immaterial that the roofs, at one time, were completed but not damaged. What is relevant is that, at the time that Driscoll finished constructing the Research Center for CHOP, some portions of the Research Center (the roofs) were defective. Therefore, the Research Center itself was the product of faulty workmanship.[5]

Second, the Policy also excludes coverage for the loss under the "faulty process" definition of "faulty workmanship." Under this second definition, no coverage exists for losses caused by or resulting from an error in the process or procedure in producing the product. *City of Barre,* 136 Vt. at 486, 396

---

**4.** This Court also notes that the distinction between definitions is, at best, difficult to apply and, at worst, analytically unsound.

**5.** As AMPICO persuasively argues in its reply brief, if this Court characterized the roofs, rather than the Research Center, as the relevant "product," then Driscoll would have no insurable interest under the Policy since the roofs would have become CHOP's property as soon as they had been completed. AMPICO's Reply at 6–7.

A.2d at 122. In the case at bar, the Policy appears to incorporate this second definition, since Exclusion # 4 describes losses caused by "faulty workmanship" in the . . . "processing" of products. . . ." Applying this definition to the present case, the subcontractors' negligent storing and carrying of equipment on the unprotected roofs constitutes a faulty process during the production of the final product, the Research Center. Therefore, the loss would still fall within Exclusion # 4.

Because under any conceivable definition, the damage to the roofs was caused by faulty workmanship, coverage for the loss is excluded under the Policy. Summary judgment will therefore be entered in AMPICO's favor on its counterclaim.

An appropriate Order follows.

### ORDER

AND NOW, this 24th day of April, 1996, upon consideration of defendant AMPICO's Motion for Summary Judgment on its counterclaim, plaintiff's response thereto, and AMPICO's reply brief thereto, and consistent with the foregoing Memorandum, it is hereby ORDERED that said Motion is GRANTED.

IT IS FURTHER ORDERED that declaratory judgment on AMPICO's counterclaim is ENTERED IN FAVOR OF defendant AMPICO and AGAINST plaintiff Driscoll as specified in the accompanying Memorandum.

Finally, although the instant Motion pertained only to AMPICO's counterclaim, it appears that this Court's entry of summary judgment in AMPICO's favor on the counterclaim renders moot Driscoll's claim against AMPICO. Accordingly, the parties are ORDERED to provide this Court with a written status report on that claim within five (5) days of the date of this ORDER.

AND IT IS SO ORDERED.