[No. 57959-2-I.   Division One.   April 16, 2007.]

THE CITY OF OAK HARBOR, *Appellant*, v. ST. PAUL MERCURY INSURANCE COMPANY, *Respondent*.

*Thomas D. Heffernan* (of *Heffernan Law Firm, PLLC*), for appellant.

*Lawrence Gottlieb* (of *Betts Patterson Mines, PS*), for respondent.

¶1 Cox, J. — At issue is whether St. Paul Mercury Insurance Company met its burden to show there was no genuine issue of material fact regarding the application of its faulty work exclusion to the City of Oak Harbor's (City) claim under its all-risks policy. Because this record shows there was no genuine issue of material fact and St. Paul was entitled to judgment as a matter of law, we affirm.

¶2 In 2002, the City hired R&R Environmental, Inc., to dredge biosolids from lagoons located in the City's wastewater treatment plant. The City and R&R signed a contract for this service. The contract, among other things, required R&R to leave no more than approximately one foot of

biosolids in the bottom of the lagoon.[1] The contract also prohibited R&R from causing any damage to the liner and required R&R to repair any damage to the liner that may have resulted.[2]

¶3 R&R performed the dredging project. About a year later, the City discovered many tears in one of the lagoon liners. An engineering firm determined that R&R more likely than not caused the liner damage, most probably from defectively operating the auger that was used to break up the biosolids. Shortly before trial, the City, in a separate action from this, settled with R&R in exchange for its primary insurance limits of $1,000,000.

¶4 The City had an "all-risks" insurance policy with St. Paul. The City sued St. Paul in this action to recover under that policy. The trial court granted St. Paul's motion for summary judgment based on the defense that the faulty workmanship exclusion applied.

¶5 The City appeals.

## SCOPE OF THE POLICY EXCLUSION

¶6 The City argues that there is a material factual dispute regarding the cause of the liner damage. It also claims that the policy exclusion for faulty workmanship does not apply to the damage in this case. Because the cause of the liner damage is not in dispute and it is covered by the plain meaning of "faulty workmanship," the trial court correctly ruled that the exclusion applies to bar coverage.

¶7 We review a trial court's summary judgment determination de novo.[3] Summary judgment is appropriate if, viewing all facts in the light most favorable to the nonmoving party, there is no genuine issue of fact and the

---

[1] Clerk's Papers at 43 (dredging contract at P 3.1.4(a)-(c)).

[2] *Id.* at 42-43 (dredging contract at P 3.1.3(d)-(e)).

[3] *Herron v. Tribune Publ'g Co.*, 108 Wn.2d 162, 169, 736 P.2d 249 (1987).

moving party is entitled to judgment as a matter of law.[4] A factual dispute is material if the outcome of the case depends upon it.[5]

¶8 Interpretation of an insurance contract is an issue of law we review de novo.[6] A court should construe an insurance contract as a whole, giving words their plain, ordinary meaning.[7] Courts should read an insurance contract the way an average consumer of insurance would.[8] Insurance contracts should not be given a strained or forced interpretation, but a practical and reasonable one.[9]

¶9 If an insurance contract is ambiguous in that it is subject to more than one reasonable interpretation, the language should be interpreted against the insurer.[10] Thus, if a policy exclusion drafted by the insurance company is ambiguous, the exclusion is rendered ineffective.[11]

¶10 First, the City argues that there is a genuine issue of material fact regarding the cause of the liner damage. But the City conceded in its trial court brief that R&R's negligence caused the property damage in this case:

During its dredging operations in August and September 2002, *R&R negligently caused* the auger of its hydraulic dredge to

---

[4] *Id.* at 170; CR 56(c).

[5] *Hash v. Children's Orthopedic Hosp. & Med. Ctr.*, 110 Wn.2d 912, 915, 757 P.2d 507 (1988).

[6] *Ross v. State Farm Mut. Auto. Ins. Co.*, 132 Wn.2d 507, 515, 940 P.2d 252 (1997).

[7] *Kitsap County v. Allstate Ins. Co.*, 136 Wn.2d 567, 575-76, 964 P.2d 1173 (1998).

[8] *Id.*

[9] *Litho Color, Inc. v. Pac. Employers Ins. Co.*, 98 Wn. App. 286, 296, 991 P.2d 638 (1999).

[10] *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 733, 837 P.2d 1000 (1992).

[11] *Id.*

repeatedly cut, rip and tear the heavy plastic liner on the bottom of the City's sewer lagoon.[12]

¶11 We will not review a claim that was not raised in the trial court.[13] The City cannot now claim that something else caused the liner damage.

¶12 The City also argues on appeal that there is a factual dispute about whether the loss was "inherent" in the dredging process or "fortuitous." As we will discuss more fully later in this opinion, this alleged dispute is not a genuine issue of material fact. Interpreting the faulty workmanship exclusion does not require us to consider whether the loss was inherent or fortuitous. Coverage under this contract can be decided as a matter of law.

¶13 Determining coverage under an insurance policy is a two-step process.[14] First, we must decide whether the policy in question applies to the type of loss, and second, we decide whether an exclusion to coverage applies.[15] The only issue on appeal in this case is whether the faulty workmanship exclusion applies to the loss.

¶14 The City argues that the faulty workmanship exclusion does not apply because the property damage was "fortuitous." This argument misapplies the legal doctrines at issue in this case.

¶15 Under an all-risks insurance policy, recovery is allowed " 'for all fortuitous losses' " unless a specific exclusion applies.[16] St. Paul concedes that the loss in this case was "fortuitous" and that the all-risks policy insuring

---

[12] Clerk's Papers at 76 (Pl.'s Opp'n to Def.'s Mot. for Summ. J.) (emphasis added).

[13] *See* RAP 2.5(a).

[14] *McDonald*, 119 Wn.2d at 731.

[15] *Id.*

[16] *Underwriters Subscribing to Lloyd's Ins. Cert. No. 80520 v. Magi, Inc.*, 790 F. Supp. 1043, 1046 (E.D. Wash. 1991) (quoting 13A GEORGE J. COUCH, RONALD A. ANDERSON & MARK S. RHODES, COUCH CYCLOPEDIA OF INSURANCE LAW § 48:141 (2d rev. ed. 1982); citing 5 JOHN ALLEN APPLEMAN, INSURANCE LAW AND PRACTICE § 3092, at 371 (1970)).

provision applies. Thus, the issue here is whether the faulty workmanship exclusion applies to bar coverage.

¶16 We start with the plain meaning of the faulty workmanship exclusion contained in the policy:

> We won't cover loss caused by *faulty*, inadequate or defective . . . design, specifications, *workmanship*, repair, construction, renovation, remodeling, grading, compaction . . . .
>
> . . . .
>
> All of the above apply to part or all of any property on or off the location described in the Coverage Summary.[17]

According to the dictionary, "faulty" means "marked by a fault."[18] "Workmanship" has two definitions : (1) "the art or skill of a workman : the execution or manner of making or doing something : CRAFTSMANSHIP" and (2) "something that is effected, made, or produced."[19] In short, "workmanship" means both (1) using skill to make or do something and (2) the end product of that work.[20]

¶17 Washington law requires us to give effect to the plain meaning of each contract exclusion.[21] Unlike in many of the cases cited by the City in its brief, "workmanship" here appears in a list along with the words "design, specifications, . . . repair, construction, renovation, remodeling, grading, [and] compaction." These words all refer to processes, not aspects of a final product.[22] Also, "workmanship" must mean something distinct from "construction" and

---

[17] Insurance Contract General Rules at 6, Clerk's Papers at 128 (emphasis added).

[18] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 829 (1993).

[19] *Id.* at 2635.

[20] *See Allstate Ins. Co. v. Smith*, 929 F.2d 447, 450 (9th Cir. 1991) (recognizing these two definitions).

[21] *See Findlay v. United Pac. Ins. Co.*, 129 Wn.2d 368, 378, 917 P.2d 116 (1996); *Kitsap County*, 136 Wn.2d at 575-76.

[22] *See Schultz v. Erie Ins. Group*, 754 N.E.2d 971, 976-77 (Ind. Ct. App. 2001) (interpreting an exclusion very similar to this one and concluding that the word "workmanship" falling in between "planning" and "maintenance" "signifies a component of the building process leading up to a finished product").

"design," or else it would be superfluous.[23] Accordingly, "workmanship" here includes using skill or craft to make or do something that is not limited to the construction of property. Likewise, it includes the resulting product.[24]

¶18 In interpreting exclusions similar to the one in this case, many courts have debated whether the term "workmanship" means a process or a product.[25] Other courts have inquired whether "faulty workmanship" encompasses a contract standard or a tort standard.[26] The tort standard asks whether the actor's negligence caused the property damage (similar to a "process"), and the contract standard asks whether the actor fulfilled its obligations under the contract or whether instead it breached the contract (similar to a "product").[27]

¶19 It is not necessary for us to resolve these debates in this case. Under any of these definitions, the exclusion applies to the facts of this case.

¶20 The City conceded below that R&R was negligent in dredging the pit. This violates the "negligence" definition of "faulty workmanship." It also means that R&R was faulty in making or doing something—a process.

¶21 It is equally clear that R&R breached its contract, which specifically required R&R to dredge within one foot of the liner without causing any tears in or damage to the

---

[23] This is not true in many of the cases the City relies upon. For example, the exclusion in one only excluded " 'faulty materials or faulty workmanship or error in design or latent defect,' " not both "construction" and "workmanship." *City of Barre v. N.H. Ins. Co.*, 136 Vt. 484, 486, 396 A.2d 121 (1978).

[24] *See Schultz*, 754 N.E.2d at 975-77 (concluding that "faulty workmanship" is not ambiguous, in part because an insurer likely meant to include both perils—the process and the product—in the exclusion).

[25] *E.g., Allstate Ins. Co.*, 929 F.2d at 449 (concluding that it is ambiguous); *City of Barre*, 136 Vt. at 487 (concluding that it means a product); *Kroll Constr. Co. v. Great Am. Ins. Co.*, 594 F. Supp. 304, 307 (N.D. Ga. 1984) (concluding that it means a process); *Schultz*, 754 N.E.2d at 976-77 (concluding that it means both).

[26] *E.g., Frank Coluccio Constr. Co. v. King County*, 136 Wn. App. 751, 775-77, 150 P.3d 1147 (2007).

[27] *Id.*; *see also Otis Elevator Co. v. Civil Factory Mut. Ins. Co.*, 353 F. Supp. 2d 274, 281 (D. Conn. 2005) (applying the contract standard); *L.F. Driscoll Co. v. Am. Prot. Ins. Co.*, 930 F. Supp. 184, 187 (E.D. Pa. 1996) (applying the tort standard).

liner. Therefore, R&R likewise violated the "contract" definition of "faulty workmanship." And R&R produced a faulty product—a dredged pit that had a liner torn in several places.[28]

¶22 The City argues that the faulty workmanship exclusion cannot apply because something "external" to construction of the lagoon liner caused the damage to the liner. This argument contravenes Washington case law, and we reject it.

¶23 In *Capelouto v. Valley Forge Insurance Co.*,[29] this court held that a faulty workmanship exclusion applied when the city's sewage bypass system (used while sewer pipes were being replaced) failed and caused sewage to back up and damage a nearby home. There, the insurance policy excluded "[f]aulty . . . *[d]esign*, specifications, *workmanship*, repair, construction, renovation, remodeling, grading, [and] compaction . . . . on or off the described premises."[30] Capelouto argued that inadequate equipment used off-site for the bypass system was distinct from the inadequate design and specifications for the system or the workmanship at the construction site. This court disagreed.[31] Because the sewage pump was inadequate to handle the job, it was a faulty "design" or "specification" under the exclusion.[32] It did not make a difference that the bypass project was "external" to the covered property (the nearby home) or the construction of that property.

¶24 The City's similar argument in this case, where workmanship is involved, is unpersuasive. The City admits in its brief that *Capelouto* involved "damage to a house from extraneous operations." It attempts to distinguish that case on the basis that the cause of the damage was inadequate

---

[28] *Accord L.F. Driscoll*, 930 F. Supp. at 189.

[29] 98 Wn. App. 7, 990 P.2d 414 (1999).

[30] *Id.* at 14 (emphasis added) (first alteration in original).

[31] *Id.* at 14-15.

[32] *Id.*

design or specifications "within the plain meaning of that policy's exclusion." This distinction misses the point. The "design" and "specifications" terms are not at issue in this case. *Capelouto* does not help us define the term "workmanship," which is a separate term in the exclusion. *Capelouto* simply illustrates that something "external" from the covered property can qualify as faulty design, specifications, or workmanship.

¶25 The City further argues that negligently performing the dredging project was not faulty workmanship because it was not completely foreseeable or "inherent" in the project. According to this theory, because R&R acted outside of the contract requirements by dredging too close to the liner and cutting it, its actions were not inherent in the construction process. But contractor negligence is never a project requirement. By the City's reasoning, any time a contractor was negligent *and performed in a faulty manner*, the faulty workmanship exclusion would not apply because that negligence was not "inherent" in the project. This makes no sense. If faulty workmanship were exempted only when foreseeable and inherent in a project, the exclusion would cease to have any meaning whatsoever.

¶26 Similarly, the City argues, "Nor was there any inherent defect in the process of dredging the biosolids that *necessarily* caused damage to the liner."[33] This argument ignores the distinction between design/specifications and workmanship. If the dredging process had "necessarily" caused liner tears, then the contract *design* or *specifications* would likely have been to blame. So the City is essentially arguing that only faulty design or specifications are exempted from the policy, but workmanship is not. This argument renders the term "workmanship," which is listed separately from "design" and "specifications" in the exclusion, meaningless. We decline to adopt such a construction.

¶27 R&R's dredging was not external to the "workmanship" being done on the covered property—it *was* the

---

[33] Appellant's Br. at 11 (emphasis added).

workmanship in question. Although the lagoon and its liner were constructed long ago, R&R was still negligent in its "workmanship" when it dredged the lagoon. This was in fact the work R&R contracted to complete. The faulty manner in which it performed that work was the cause of the property damage.

¶28 Finally, the parties dispute the applicability of *McDonald v. State Farm Fire & Casualty Co.*,[34] one of the few Washington cases to discuss faulty workmanship exclusions, to this case. We need not address that case in view of our disposition of the issues.

¶29 We affirm the summary judgment order.

SCHINDLER, A.C.J., and DWYER, J., concur.

---

[34] 119 Wn.2d 724, 837 P.2d 1000 (1992).