# United States Court of Appeals
### For the Eighth Circuit

_____

No. 11-3369
_____

BSI Constructors, Inc.

*Plaintiff - Appellant*

v.

Hartford Fire Insurance Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: June 12, 2012
Filed: January 31, 2013

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

BEAM, Circuit Judge.

In this insurance coverage dispute, BSI Constructors, Inc., initiated action against Hartford Fire Insurance Company, alleging breach of contract and vexatious refusal to pay claims under Missouri law. Hartford moved for summary judgment. Determining Hartford's policy excluded coverage under present circumstances, the

district court[1] granted Hartford's motion. BSI appeals from this adverse judgment, and we affirm.

## I.     BACKGROUND

BSI contracted to construct a commercial building in St. Charles, Missouri. As the general contractor on the project, BSI subcontracted with Stephenson Roofing to install a thermoplastic polyolefin roof. BSI also subcontracted with Murphy Company and Industrial Sheet Metal Erectors to complete other tasks that did not involve roof installation.

After Stephenson had completed the roof, the other subcontractors continued to engage in their various trades. Recognizing that the completed roof needed protection, BSI's project manager advised the subcontractors that they needed to take precautionary measures in completing their contracts. Notwithstanding the project manager's warnings, personnel from Murphy Company and Sheet Metal Erectors failed to take reasonable measures necessary to protect the roof. As a result of these failings, the roof was severely damaged. The owner of the premises hired a consultant to inspect the roof, and the consultant discovered several hundred hole patches. The consultant determined that due to the damage, water had penetrated the roof product and entered the roofing system.

As the roof had suffered significant damage, BSI sent a loss notice to its insurer, Hartford. The loss notice informed Hartford that the manufacturer of the roof would not guarantee the 15-year warranty because the membrane had been punctured during construction and water had penetrated the insulation below. At the time, BSI held a Builder's Risk Policy with Hartford, effective from January 10, 2006, to August 10,

_____

[1]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

2007. Hartford hired a roof inspector to investigate the loss, and the inspector concluded that due to the damage and several hundred patches, the roof needed to be replaced. Ultimately, the roof was replaced for $174,000.

Hartford eventually denied BSI's claim under the policy's "faulty workmanship" exclusion. The policy provides a general grant of coverage for "direct physical 'loss' to Covered Property caused by any of the Covered Causes of Loss." After the general coverage grant, the policy enumerates the relevant exclusion:

> **2.** We will not pay for "loss" caused by or resulting from any of the following:
>
> . . . .
>
> **g.** Defective, deficient or flawed workmanship or materials, or for expenses to redesign or revise flawed or defective plans or architectural designs.
>
> But we will pay for "loss" to other Covered Property that results from such defective workmanship, materials or design provided such loss or damage is not otherwise excluded in this policy.

On October 8, 2009, BSI sued Hartford in Missouri state court, alleging breach of contract and vexatious refusal to pay under Missouri law. After removing the case to federal court, Hartford moved for summary judgment. The district court granted the motion as to BSI's breach of contract claim, concluding that the faulty workmanship exclusion excluded coverage and the ensuing loss exception did not apply. The district court also granted Hartford's motion for summary judgment as to BSI's vexatious refusal to pay claim, reasoning that, as a matter of law, Hartford could not be liable for vexatious refusal to pay when Hartford had no duty to provide coverage. BSI now appeals from this adverse grant of summary judgment.

## II.    DISCUSSION

BSI challenges the district court's grant of summary judgment on three grounds: (1) the faulty workmanship exclusion did not exclude coverage for the damage to the roof; (2) the ensuing loss exception is ambiguous; and (3) Hartford failed to set forth facts showing it is entitled to summary judgment on BSI's vexatious refusal claim. "We review a district court's grant of summary judgment de novo, including its interpretation of state law." Raines v. Safeco Ins. Co. of Am., 637 F.3d 872, 875 (8th Cir. 2011). The parties agree that Missouri law governs this dispute. Because the Supreme Court of Missouri has never addressed the specific policy language at issue, our task is to predict how that court would rule if confronted with the same coverage dispute. See Blankenship v. USA Truck, Inc., 601 F.3d 852, 856 (8th Cir. 2010) (recognizing that we make an "Erie-educated guess" when the state supreme court has not addressed the issue). In the absence of controlling authority, we turn to other jurisdictions for persuasive guidance in making this prediction. United Fire & Cas. Co. v. Tharp, 46 S.W.3d 99, 105 (Mo. Ct. App. 2001).

### A.    Faulty Workmanship Exclusion

The faulty workmanship exclusion excludes coverage for "[d]efective, deficient or flawed workmanship or materials." BSI frames the issue as whether this exclusion "excludes coverage only for defects in the quality of the project as constructed or whether it also excludes coverage for accidental damage to the project during construction." "Within the context of an insurance policy, workmanship has been interpreted by other courts to mean a product, a process, or both." Fourth St. Place, LLC v. Travelers Indem. Co., 270 P.3d 1235, 1242 (Nev. 2011). On a previous occasion, applying Nebraska law to a similar exclusion, we affirmed the district court's determination that "'workmanship' could describe the process of producing something as well as the finished product." Royal Ins. Co. of Am. v. Duhamel Broad. Enters., Inc., 170 F. App'x 438, 441 (8th Cir. 2006) (per curiam) (unpublished). We

-4-

conclude that if confronted with the issue, the Supreme Court of Missouri would read the faulty workmanship exclusion to encompass both a flawed product and a flawed process and thus exclude coverage under the circumstances of this case.

Although Missouri courts have not had the opportunity to interpret the faulty workmanship exclusion, it is not a unique provision. To be sure, the faulty workmanship exclusion has been the subject of litigation in several jurisdictions. See Steven Plitt, Daniel Maldonado, and Joshua D. Rogers, 11 Couch on Insurance § 153:79 (Lee R. Russ and Thomas F. Segalla, eds., 3d ed. 2005). For example, in L.F. Driscoll Co. v. Am. Prot. Ins. Co., 930 F. Supp. 184 (E.D. Pa. 1996), the United States District Court for the Eastern District of Pennsylvania resolved a dispute with very similar facts and issues. There, after a subcontractor completed installation of several roofs on a commercial building, other subcontractors damaged the roofs in completing their trades. Id. at 185. The insurer denied coverage under a "faulty workmanship" exclusion. Id. Relying on other cases applying the exclusion, the court explained that "faulty or defective workmanship is the faulty or defective execution of making or doing something" and that "[a] job that is defectively executed is one that is performed negligently." Id. at 187 (internal quotation omitted). And, although the subcontractors who damaged the roof were not involved in its installation, they nevertheless performed their duties negligently. Id.

Furthermore, the Driscoll court determined that under either a faulty product or faulty process definition of faulty workmanship, the roof damage was excluded. Id. at 188. As the court explained, because the damaged roof resulted in a flawed product (the building project), the damage fell within the faulty product definition. Id. Moreover, because the subcontractors negligently stored and carried equipment on the unprotected roofs, they engaged in a faulty process to complete the building project. Id. at 189. Accordingly, the court determined that the faulty workmanship exclusion excluded coverage for the loss. Id.

Like the district court, we find <u>Driscoll</u>'s reasoning persuasive as applied to the present facts. Here, the subcontractors acted negligently while completing tasks directly related to the building's construction. This negligence in turn damaged the roof, and BSI seeks coverage for that damage. Because under an ordinary definition, "'workmanship' denotes both 'process' and 'product,'" we think the exclusion includes both. <u>Schultz v. Erie Ins. Grp.</u>, 754 N.E.2d 971, 976 (Ind. Ct. App. 2001); <u>see also</u> <u>Risher v. Farmers Ins. Co.</u>, 200 S.W.3d 84, 88 (Mo. Ct. App. 2006) (recognizing that words are to be given their ordinary meaning in policy interpretation). Therefore, it is inconsequential that the subcontractors were working on tasks unrelated to the roof, because their negligent conduct was part and parcel of the construction process as a whole and thus falls within a process definition of "workmanship."

Nevertheless, some courts have recognized that the faulty workmanship exclusion does not apply to a fortuitous event or negligent conduct that occurs extraneous to the construction process. <u>E.g.</u>, <u>U.S. Indus., Inc. v. Aetna Cas. & Sur. Co.</u>, 690 F.2d 459, 462 (5th Cir. 1982). We do not venture to speculate what type of fortuitous event or negligent conduct may be so extraneous to the actual construction process that it renders the exclusion inapplicable. We merely offer that, here, the subcontractors' negligence was not extraneous to the actual construction process. For these reasons, we find many cases BSI relies upon to be inapposite. <u>See, e.g.</u>, <u>City of Barre v. N.H. Ins. Co.</u>, 396 A.2d 121, 122 (Vt. 1978) (exclusion did not apply where negligence coupled with increased winds caused damage to project). Therefore, under the particular circumstances of this case, we conclude the faulty workmanship exclusion excludes coverage for the damaged roof.

## B.    Ensuing Loss Exception

Notwithstanding the faulty workmanship exclusion, the policy maintains coverage "for 'loss' to other Covered Property that results from such defective workmanship, materials or design provided such loss or damage is not otherwise

excluded in this policy." BSI asserts that this provision, known as the ensuing loss exception, is ambiguous. Specifically, according to BSI, it is unclear what is "other Covered Property" under the ensuing loss exception. Therefore, in BSI's view, even if the faulty workmanship exclusion applies, the ambiguity in the ensuing loss exception compels a finding of coverage. We disagree.

In the policy's general coverage grant, it describes in detail what is "Covered Property," which includes buildings and structures located on the premises where BSI contracted to build. The term "Covered Property" also includes "property that has become or is intended to become a permanent part of the building(s) or structure(s)." As noted above, because the faulty workmanship exclusion applies to the roof in this case, the ensuing loss exception maintains coverage for "Covered Property"–"other" than the roof–that suffered damage due to the defective workmanship but is not otherwise excluded. We fail to see how this clause is ambiguous and decline to adopt a "strained interpretation of the language of the policy in order to create an ambiguity where none exists." Haggard Hauling & Rigging Co. v. Stonewall Ins. Co., 852 S.W.2d 396, 401 (Mo. Ct. App. 1993). Indeed, the phrase "other Covered Property" as used in the exception must mean that the exception applies to property "other" than the roof–the very property damaged by faulty workmanship. See Vision One, LLC v. Phila. Indem. Ins. Co., 276 P.3d 300, 307 (Wash. 2012) (en banc) ("[I]f one of the specified uncovered events takes place, any ensuing loss which is otherwise covered by the policy will remain covered. The uncovered event itself, however, is never covered.") (quotation omitted). Because BSI is only seeking coverage for the damaged roof, it has not identified any "loss" to "other Covered Property" that could potentially be covered under the ensuing loss exception. See Alton Ochsner Med. Found. v. Allendale Mut. Ins. Co., 219 F.3d 501, 507 (5th Cir. 2000).

BSI goes a step further, arguing that the faulty workmanship exclusion and the ensuing loss exception create an ambiguity because the exclusion takes coverage away and in the very next breath, the exception reinstates coverage. According to BSI, this

leaves the policy "indistinct and uncertain." Under Missouri law, "it is well-settled that where one section of an insurance contract promises coverage and another takes it away, the contract is ambiguous." Jones v. Mid-Century Ins. Co., 287 S.W.3d 687, 692 (Mo. 2009) (en banc). However, this rule only applies when various sections of a policy cannot be reconciled. See id. Here, we perceive no conflict between the exclusion and the ensuing loss exception because the property for which coverage is excluded is not the same property for which coverage is maintained pursuant to the exception. Consequently, because the clauses do not conflict, the ambiguity BSI imagines does not exist.

### C. Vexatious Refusal to Pay

Finally, BSI argues that Hartford failed to satisfy Federal Rule of Civil Procedure 56(c)(1)(A) because it did not cite to facts showing it is entitled to judgment as a matter of law on BSI's vexatious refusal to pay claim. BSI goes further, contending that, as a factual matter, an insurer must negate each set of circumstances which may give rise to vexatious refusal damages–which is impossible, according to BSI. Essentially, BSI seems to advocate for a rule that holds vexatious refusal claims may never be disposed of on summary judgment. BSI's position strains credulity.

A review of the record plainly reveals that Hartford set forth undisputed facts outlining the coverage dispute at issue. From these undisputed facts, the district court rightly concluded that BSI's claim for vexatious refusal to pay must fail because Hartford had no duty to cover the loss at issue. Not only is the logic of the district court's decision irrefutable but, more importantly, Missouri precedent compels the result. See Fischer v. First Am. Title Ins. Co., No. WD 74633, 2012 WL 4074418, at *6 (Mo. Ct. App. Sept. 18, 2012) ("where an insurer had no duty to defend or indemnify under the insurance policy, there cannot be a claim for vexatious refusal to defend or indemnify"). Therefore, the district court properly granted Hartford's motion for summary judgment on BSI's vexatious refusal to pay claim.

## III.   CONCLUSION

We affirm the judgment of the district court.

_____