IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2017 Term

**FILED**
**June 1, 2017**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 16-0490

ERIE INSURANCE PROPERTY and CASUALTY COMPANY,
a corporation, and STEPHEN MYERS,
Defendants Below, Petitioners

v.

DIMITRI CHABER and MARY CHABER,
Plaintiffs Below, Respondents

Appeal from the Circuit Court of Kanawha County
Honorable James C. Stucky, Judge
Civil Action No. 14-C-1088

REVERSED AND REMANDED WITH DIRECTIONS

Submitted: April 19, 2017
Filed: June 1, 2017

Amy M. Smith, Esq.
Steptoe & Johnson PLLC
Bridgeport, West Virginia

Michelle Gaston, Esq.
Katrina N. Bowers, Esq.
Steptoe & Johnson PLLC
Charleston, West Virginia
Counsel for Petitioners

Clayton G. Anderson, Esq.
The Masters Law Firm, LC
Charleston, West Virginia
Counsel for Respondents

JUSTICE WORKMAN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1. "A circuit court's entry of a declaratory judgment is reviewed *de novo*." Syl. Pt. 3, *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995).

2. "In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syl. Pt. 1, *Pub. Citizen, Inc. v. First Nat'l Bank*, 198 W.Va. 329, 480 S.E.2d 538 (1996).

3. "'"Whenever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous.'" Syl. pt. 1, *Surbaugh v. Stonewall Casualty Co.*, 171 W.Va. 390, 283 S.E.2d 859 (1981), quoting syl. pt. 1, *Prete v. Merchants Property Insurance Co.*, 159 W.Va. 508, 223 S.E.2d 441 (1976)." Syl. Pt. 1, *Shamblin v. Nationwide Mut. Ins. Co.*, 175 W.Va. 337, 332 S.E.2d 639 (1985).

i

4. A provision in an insurance policy that excludes a loss regardless of whether such loss is "caused by an act of nature or is otherwise caused" is not ambiguous and excludes coverage for the loss whether it is caused by a man-made or a naturally-occurring event.

5. An unambiguous ensuing or resulting loss clause of an exclusion contained in an insurance policy provides a narrow exception to the exclusion but does not revive or reinstate coverage for losses otherwise unambiguously excluded by the policy. Where an uncovered event occurs, an ensuing or resulting loss that is otherwise covered by the policy will remain covered, but the uncovered event itself is not covered.

Workman, Justice:

This is an appeal by Erie Insurance Property and Casualty Company and Stephen Myers (hereinafter jointly referenced as the "Petitioners" or separately as "Erie" and "Mr. Myers"). The Petitioners contend the circuit court erred by granting declaratory judgment in favor of Mr. and Mrs. Dimitri Chaber (hereinafter the "Respondents") on an insurance policy claim. Upon thorough evaluation of the arguments of the parties, the record designated for this Court's review, and applicable precedent, we reverse the circuit court's decision and remand this matter with instructions to enter declaratory judgment for the Petitioners on the declaratory judgment portion of the complaint.

I. Factual and Procedural History

The Respondents own property in St. Albans, West Virginia. One of five commercial rental units on that property was leased by the Respondents to a motorcycle shop. On February 19, 2014, soil and rock slid down a hill located to the rear of the Respondents' property and damaged the motorcycle shop. The Respondents subsequently submitted a claim for property damage to their insurance carrier, Erie. Mr. Myers, an adjuster for Erie, examined the damage and observed that a mass of rock and soil had fallen down the steep slope behind the Respondents' property. Mr. Myers met with Mr. Chaber and discussed the

1

insurance policy's exclusion of coverage for damage caused by a landslide. The policy

contains the following exclusionary language:

> SECTION III - EXCLUSIONS
> A. Coverages 1, 2, 3, 4, and 5
> We do not cover under Building(s) - Coverage 1; Business Personal Property and Personal Property of Others - Coverage 2; Additional Income Protection - Coverage 3; Glass and Lettering - Coverage 4; and Signs, Lights, and Clocks - Coverage 5 "loss" or damage caused directly or indirectly by any of the following. Such "loss" or damage is excluded regardless of any cause or event that contributes concurrently or in any sequence to the "loss":
>
> . . . .
>
> 5. Earth Movement
> a. Earthquake, including tremors and aftershocks, and any earth sinking, rising, or shifting related to such event;
> b. Landslide, including any earth sinking, rising, or shifting related to such event;
> c. Mine subsidence, meaning subsidence of a manmade mine. whether or not mining activity has ceased; or
> d. Earth sinking (other than sinkhole collapse), rising, or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations, or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil, and the action of water under the ground surface.
>
> This exclusion applies regardless of whether any of the above, in Paragraphs 5.a. through 5.d., is caused by an act of nature or is otherwise caused.
>
> But if Earth Movement, as described in 5.a. through 5.d. above, results in fire, explosion, sprinkler leakage, volcanic action, or building glass breakage, we will pay for the "loss" or damage caused by such perils.

2

By letter dated March 24, 2014, Erie denied coverage based upon its conclusion that the Respondents' loss was not covered due to the policy's earth movement exclusion. That letter further explained Erie's determination that coverage was available for the replacement of the Respondents' broken glass pursuant to the ensuing loss[1] exception to the earth movement exclusion; however, the $3,683.73 estimate for such repair was below the Respondents' $10,000.00 deductible.

On June 16, 2014, the Respondents filed a complaint against Erie and Mr. Myers, asserting the following claims: (1) breach of contract, breach of covenants of good faith and fair dealing, and violations of the West Virginia Unfair Trade Practices Act[2] by Erie and Mr. Myers; (2) fraud and/or fraudulent misrepresentation by Mr. Myers; and (3) declaratory judgment as to whether coverage exists. By order dated April 21, 2015, the circuit court bifurcated the action and stayed all discovery unrelated to the declaratory judgment claim.

---

[1]The "ensuing loss" refers to the final portion of the policy language quoted above, specifically the provision that "if Earth Movement . . . results in fire, explosion, sprinkler leakage, volcanic action, or building glass breakage, we will pay for the 'loss' or damage caused by such perils."

[2]The Respondents actually used the phrase "Unfair Trade Protection Act," but their claim was presumably intended as an Unfair Trade Practices Act claim under West Virginia Code §§ 33-11-1 to -10 (2016).

3

Erie hired Ms. Tammy St. Clair, an expert in engineering, to render an opinion regarding the cause of the landslide. Ms. St. Clair initially provided an oral report in which she opined the landslide was caused by improper excavation of the hillside behind the building. Her subsequent formal report indicates the damage was caused by a rockfall resulting from seasonal climate change.

The Respondents hired Mr. Jack Spadaro, an expert in geotechnical engineering, to determine the proximate cause of the landslide. In his August 16, 2015, report, Mr. Spadaro opined that the improper excavation of the highwall area at the rear of the Respondents' property caused the rockfall and that highwall failure resulted from a rockfall rather than a landslide.

On September 15, 2015, the Petitioners filed a motion for partial summary judgment on the declaratory judgment portion of the claims. By order dated January 12, 2016, the circuit court denied the Petitioners' motion for partial summary judgment, reasoning that genuine issues of material fact existed regarding the cause of the Respondents' damages and whether such cause was manmade, natural, or a combination of both. The circuit court further found genuine issues of material fact "as to whether or not there is insurance coverage for the damages claimed. . . ." During a bench trial held on the declaratory judgment issue on January 11 and 12, 2016, Erie's counsel argued that the

4

determinative issue is a legal question appropriate for summary judgment. In support of that contention, Mr. Myers testified it was irrelevant under the policy whether the earth movement occurred as a result of natural or man-made causes because damages due to earth movement, whether such movement is caused by natural or man-made forces, are clearly excluded under the policy. Mr. Myers further testified that a rockfall is considered a landslide in the context of the policy language.

The circuit court entered a February 1, 2016, order granting declaratory judgment to the Respondents. The circuit court found coverage exists under the policy based upon evidence of earth movement caused by both natural and man-made events, specifically an improperly excavated hillside. The court further found the policy did not unambiguously exclude damage caused by rockfall due to man-made events and the policyholders could reasonably expect coverage for the earth movement in question. The court also found the glass breakage exception ambiguous and concluded it should be construed in favor of the Respondents.

On April 14, 2016, the circuit court entered an order certifying final judgment on the declaratory judgment claim under West Virginia Rule of Civil Procedure 54(b) and continuing the stay of the Respondents' remaining claims. The Petitioners thereafter appealed to this Court.

## II.  Standard of Review

"A circuit court's entry of a declaratory judgment is reviewed *de novo*."  Syl. Pt. 3, *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995).  This Court's review of the circuit court's findings subsequent to a bench trial is premised upon the following standard of review:

> In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied.  The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard.  Questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Pub. Citizen, Inc. v. First Nat'l Bank*, 198 W.Va. 329, 480 S.E.2d 538 (1996).  This Court has also clearly articulated the standard for reviewing findings of ambiguity within insurance contracts.  "[T]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination which . . . is reviewed de novo on appeal."  *Dairyland Ins. Co. v. Fox*, 209 W.Va. 598, 601, 550 S.E.2d 388, 391 (2001) (quoting *Payne v. Weston*, 195 W.Va. 502, 506-07, 466 S.E.2d 161, 165-66 (1995)).  With these standards as guidance, this Court proceeds to consider whether the circuit court's ruling was erroneous.

III. Discussion

A. Earth Movement Exclusion

The Petitioners contend the circuit court erred in holding the policy's earth movement exclusion fails to unambiguously preclude coverage in this instance. They argue the earth movement exclusion clearly and unambiguously excludes coverage for *all* earth movement, *regardless of* whether such movement was caused by an act of nature or was otherwise caused, quoting the pivotal policy language, as follows: "This exclusion applies regardless of whether any of the above . . . is caused by an act of nature or is otherwise caused."

This Court has not had prior occasion to address this particular exclusionary language; thus, this is a matter of first impression. In articulating our standard for determining ambiguity in insurance policies, this Court has consistently observed that "'"[w]henever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous."' Syl. pt. 1, *Surbaugh v. Stonewall Casualty Co.*, 171 W.Va. 390, 283 S.E.2d 859 (1981), quoting syl. pt. 1, *Prete v. Merchants Property Insurance Co.*, 159 W.Va. 508, 223 S.E.2d 441 (1976)." Syl. Pt. 1, *Shamblin v. Nationwide Mut. Ins. Co.*, 175 W.Va. 337, 332 S.E.2d 639 (1985). As the Court observed in *Payne*,

> [o]nly if the court makes the determination that the contract
> cannot be given a certain and definite legal meaning, and is

7

therefore ambiguous, can a question of *fact* be submitted to the jury as to the meaning of the contract. It is only when the document has been found to be ambiguous that the determination of intent through extrinsic evidence become a question of fact.

195 W.Va at 507, 466 S.E.2d at 166. "[A] court[, however,] should read policy provisions to avoid ambiguities and not torture the language to create them." *Id*.

In attempting to evaluate the exclusionary language in the present case, the circuit court relied extensively upon this Court's holding in *Murray v. State Farm Fire & Casualty Co*., 203 W.Va. 477, 509 S.E.2d 1 (1998). The exclusionary language this Court addressed in *Murray*, however, was markedly different from that contained in the insurance policy at issue herein. This Court found the exclusionary language in *Murray* ambiguous because the policy excluded certain losses regardless of whether the event "arises from natural or *external forces*, or occurs as a result of any combination of these." *Id*. at 489, 509 S.E.2d at 13 (emphasis added). In analyzing that policy, this Court focused upon the ambiguity of the term "external," concluded the term was ambiguous, and refused to "define the word to include man-made forces as [the insurer] would have us do." *Id*.

By contrast, the language found to be ambiguous in *Murray* is nonexistent in the present case; consequently, the *Murray* analysis is not dispositive of the present case.[3] Critically, the language of the exclusionary clause utilized in the present case, specifically the phrase "caused by an act of nature or is otherwise caused," was developed by the Insurance Services Office,[4] in 2013 and was apparently designed to minimize confusion regarding the scope of coverage and the nature of earth movement exclusionary language. *See generally* William A. Schreiner, Jr., *Recent Developments in Property Insurance Coverage Litigation*, 49 Tort Trial & Insur. Prac. L. J. 401 (2013). Due to its relatively recent inclusion in insurance policies, courts have had limited opportunity to analyze the contours and applications of this exclusionary language to various factual scenarios. However, the language has been implicated in some manner in several cases since its inception, and it has *not* been deemed ambiguous. In *Citi Gas Convenience, Inc. v. Utica Mut. Ins. Co.*, No. CV 15-6691, 2016 WL 492474 (E.D. Pa. Feb. 9, 2016), for instance, the United States District Court in Pennsylvania addressed the phrase "is caused by an act of

---

[3]The *Murray* decision is helpful to the Court's analysis of the present case to the extent it clarifies the meaning of the word "landslide" in the policy, as explained in syllabus point four of *Murray*, as follows: "The plain, ordinary meaning of the word 'landslide' in an insurance policy contemplates a sliding down of a mass of soil or rock on or from a steep slope." 203 W.Va. at 479, 509 S.E.2d at 3.

[4]The Insurance Services Office is an advisory organization comprised of approximately 1,400 property and casualty insurers. It promulgates standard form insurance policies to be presented to state insurance regulators for approval. *See* Christopher C. French, *Insuring Landslides: America's Uninsured Natural Catastrophes*, 17 Nev. L.J. 63, 96 (2016); *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 772 (1993).

nature or is otherwise caused" and found the plaintiff's argument against the insurance company ineffectual, explaining its rationale:

> All in all, Citi Gas's arguments are unavailing. While dictionary definitions of "surface water" may suggest naturally occurring water, Citi Gas ignores the language of the policy that modifies the term "surface water." "Surface water" is a term in Paragraph 1 of the policy's water exclusion. The water exclusion states that it "applies regardless of whether any of the above in Paragraphs 1. through 5., is *caused by an act of nature or is otherwise caused*." *See* Def.'s Mot., Ex. B, at 50. Thus, the policy clearly and plainly excludes damage from "surface water" that "is caused by an act of nature or is otherwise caused." Even in the absence of a specific definition, then, "surface water," *as used in this policy, encompasses both "surface water" from natural sources and "surface water" from man-made sources.*

*Id*. at *3 (emphasis added and footnote omitted). With regard to cases cited by the plaintiffs in the *Citi Gas* case, the court noted:

> Even if those cases were somehow binding on this Court, the exclusion clauses in the insurance policies discussed in those cases did not contain language like the language in the Citi Gas policy that clarified that the exclusion applied "whether any of the above in Paragraphs 1. through 5., *is caused by an act of nature or is otherwise caused.*"

*Id*. at *4 n.6 (emphasis added); *see also Paros Props. LLC v. Colorado Cas. Ins. Co.*, 835 F.3d 1264, 1274-75 (10th Cir. 2016) ("[U]nder the Policy it makes no difference whether any water causing the avalanche had been diverted by manmade features; mudslide damage is excluded whether the mudslide 'is caused by an act of nature or is otherwise caused.'"); *Ski Chalet Village Owners Club, Inc. v. Empl'r Mut. Cas. Co.*, No. 3:16-CV-20-TAV-HBG,

10

2016 WL 6892759, at *1 (E.D. Tenn. Nov. 22, 2016) (holding earth movement and water exclusions applied "regardless of whether . . . caused by an act of nature or is otherwise caused. . . ."); *SWJKM, LLC v. Gen. Cas. Ins. Co.*, No. A-13-447, 2014 WL 2727101, at *3 (Neb. Ct. App. June 17, 2014) (quoting portion of policy applying water damage exclusion "regardless of whether any of the above . . . is caused by an act of nature or is otherwise caused" and finding "[t]here is nothing ambiguous about the water exclusion in [the] policy.").

Evaluating the exclusionary language in the context of a declaratory judgment action, the New York Supreme Court, Appellate Division, in *Harleysville Insurance Co. of New York v. Potamianos Properties*, *LLC*, 969 N.Y.S.2d 342 (N.Y. App. Div. 2013), applied the language "regardless of whether [the loss] is caused by an act of nature or is otherwise caused" and held the loss was excluded under the "*unambiguous* terms in the policy." *Id*. at 343 (emphasis added). The court explained the exclusion pertaining to water "applies even though the loss resulted from a ruptured pipe rather than from a natural phenomenon. The endorsement expressly provides that its exclusions are applicable regardless of whether the occurrence is 'caused by an act of nature or is otherwise caused. . . .'" *Id*. at 343-44; *see also YMCA of Pueblo v. Secura Ins. Cos.*, No. 14-CV-00931-MJW, 2015 WL 535953, at *1 (D. Colo. Feb. 6, 2015); *Theater Grp. 3, LLC, & Theater Grp. IV, Inc. v. Secura Ins. Co.*, No. 317393, 2014 WL 6494818, at *2 (Mich. Ct. App. Nov. 13, 2014); *Ashrit Realty LLC v.*

11

*Tower Nat. Ins. Co.*, No. A-1647-13T4, 2015 WL 248490 (N.J. Super. Ct. App. Div. Jan. 20, 2015).

We have unearthed no authority for a finding of ambiguity in this exclusionary phrase. The phrase clearly and unambiguously excludes coverage for a landslide resulting from a natural event or otherwise. A provision in an insurance policy excluding a loss regardless of whether such loss is "caused by an act of nature or is otherwise caused" is not ambiguous and excludes coverage for the loss whether it is caused by a man-made or a naturally-occurring event. Thus, in the present case, whether the event was triggered by natural forces or improper excavation of the hillside at the rear of the property, the exclusion applies. The Court consequently reverses the decision of the lower court on that issue.

### B.  Assertions Regarding Efficient Proximate Cause, Anti-Concurrent Causation Clause, and Reasonable Expectations

Having concluded the exclusionary language is clear and unambiguous, the remaining arguments regarding efficient proximate cause, the anti-concurrent causation clause, and reasonable expectations are rendered inconsequential. An anti-concurrent causation clause provides that where a loss is caused by a combination of excluded and

12

covered perils, the entire loss is excluded.[5]  The anti-concurrent causation clause in this case

provided that the enumerated excluded losses would be excluded "regardless of any cause

or event that contributes concurrently or in any sequence to the 'loss[.]'"

Thus, unless the efficient proximate cause[6] of the loss is determined to be a

covered risk, the anti-concurrent causation clause does not become relevant to the analysis.

In other words, where neither of the alleged "causes" is covered by the insurance policy,

there is no event or occurrence to be evaluated to determine which of the two is the efficient

proximate cause; such evaluation would be an exercise in futility.[7]  An anti-concurrent

---

[5]*See, e.g., Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 429-431 (5th Cir. 2007) (finding anti-concurrent causation provision unambiguous and enforceable and excluding coverage where loss caused by combination of covered peril [hurricane winds] and excluded peril [flooding] ); *Cooper v. Am. Family Mut. Ins. Co.*, 184 F.Supp.2d 960, 962 (D. Ariz. 2002) (anti-concurrent causation provision prevented recovery for loss caused by excluded peril [mold] even though covered peril [water] may also have contributed).

[6]*See* Steven Plitt *et al.*, 7 *Couch on Insurance* § 101:55 (3d ed. 2006) ("The efficient proximate cause rule permits recovery under the insurance policy for a loss caused by a combination of a covered risk and an excluded risk only if the covered risk . . . is one that sets the other causes in motion that, in an unbroken sequence, produced the result for which recovery is sought.").

[7]This would be equally true where both of the asserted "causes" of the damage were covered losses.  *See, e.g., Ken Johnson Props., LLC v. Harleysville Worcester Summary Ins. Co.*, 2013 WL 5487444, at \*14 (D. Minn. Sept. 30, 2013) ("The Court finds, however, that the efficient proximate cause inquiry undertaken by courts to distinguish between covered and excluded causes of loss is not the appropriate inquiry when presented with two covered causes of loss.").

13

causation clause is only applicable where there is *both* a covered loss and an excluded loss. *See* Peter Nash Swisher, *Causation Requirements in Tort and Insurance Law Practice: Demystifying Some Legal Causation "Riddles*," 43 Tort Trial & Ins. Prac. L.J. 1, 26 (2007) (explaining concurrent-causation controversies arise where some causes of loss are covered and some are excluded).

Based upon this Court's conclusion that the policy's earth movement exclusion unambiguously precludes coverage for earth movement caused by *either* natural or man-made events, the question of the proximate cause of the landslide is not relevant. Whether caused by nature or otherwise caused by an improperly excavated hillside, the loss is excluded, and application of the anti-concurrent causation clause is unnecessary.

Likewise, this Court's conclusion regarding the clear and unambiguous exclusionary language renders an analysis of the policyholders' reasonable expectations unnecessary and inconsequential. The Court has very clearly explained "[b]efore the doctrine of reasonable expectations is applicable to an insurance contract, there must be an ambiguity regarding the terms of that contract." *Murray*, 203 W.Va. at 490 n.12, 509 S.E.2d at 14 n.12 (citing Syl. Pt. 2, *Robertson v. Fowler*, 197 W.Va. 116, 475 S.E.2d 116 (1996)). There is no ambiguity in the policy exclusion at issue herein. As the District Court of Appeal of Florida observed in *State Farm Fire & Casualty Co. v. Castillo*, 829 So.2d 242 (Fla. Dist.

Ct. App. 2002), "[w]hile it is certainly understandable that the [insureds] may have reasonably expected their homeowner's policy to cover the damages in question, [the insurer] correctly points out that it is the policy's terms which define the coverage, not the insureds' reasonable expectations." *Id*. at 247.

Similarly, in *Chase v. State Farm Fire & Casualty Co.*, 780 A.2d 1123 (D.C. 2001), the District of Columbia Court of Appeals recognized that "purchasers of insurance may often retain expectations that are contrary to the language of their policies." *Id*. at 1132. "We appreciate that even if policy language is explicit, insureds may not actually read it; or, if they do read it, that they may not comprehend fully all the ramification of the unavoidably complicated provisions concerning coverage and exclusions from coverage. . . ." *Id*. "*Nonetheless*, the reasonable expectations doctrine is not a mandate for courts to rewrite insurance policies and reallocate their assignment of risks between insurer and insured." *Id*. (emphasis added). Where policies "are clear and unambiguous, they will be enforced by the courts as written, so long as they do not 'violate a statute or public policy.'" *Id*. (internal citations omitted).

## C. Ensuing Loss Provision

The Petitioners contend the circuit court erred in finding the ensuing loss provision ambiguous and in construing it to provide coverage for the entire loss rather than

15

the limited portion of the loss caused by glass breakage. As quoted above, the ensuing loss provision provides: "But if Earth Movement, as described in 5.a. through 5.d. above, results in fire, explosion, sprinkler leakage, volcanic action, or building glass breakage, we will pay for the 'loss' or damage caused by such perils." The circuit court found the phrase "such perils" to be reasonably susceptible to two different meanings and therefore ambiguous. Consequently, the circuit court construed the provision in favor of the Respondents, noting their assertion "that glass breakage is a damage, not a peril, and that the damage resulting from a rockfall, a peril, is covered."

The circuit court's interpretation of the ensuing loss provision is unjustifiable, based upon the purpose and express language of the ensuing loss provision. The effect of an ensuing loss provision is to provide coverage for certain losses occasioned by events; the entirety of the loss, however, is not covered by an ensuing loss provision.

> Some insurance policies contain "ensuing loss provisions," that provide coverage for certain covered perils which would otherwise be covered even when that covered peril was caused by an excluded peril. In other words, an ensuing loss provision provides coverage for specific types of losses that are otherwise covered in the policy when that loss is the result of the occurrence of an excluded peril. For example, a policy may provide that it does not cover any loss caused by earth movement; however, any ensuing loss by fire which is not excluded or excepted is covered. This means the policy covers loss caused by fire that would not have occurred but for the earth movement; however, other damage caused by the earth movement is not covered.

16

11 *Couch on Insurance* § 153:70 (3d ed. 2014).

This Court has not evaluated ensuing loss provisions; however, other jurisdictions have not found such provisions unenforceable. In *BSI Constructors, Inc. v. Hartford Fire Insurance Co.*, 705 F.3d 330 (8th Cir. 2013), for instance, the Eighth Circuit Court of Appeals found no ambiguity in an ensuing loss provision related to faulty workmanship and specifically declined to adopt a "strained interpretation of the language of the policy in order to create an ambiguity where none exists." *Id.* at 334 (internal citations omitted). Similarly, in *Vision One, LLC v. Philadelphia Indemnity Insurance Co.*, 276 P.3d 300 (Wash. 2012), the court explained the impact of an ensuing loss provision: "[I]f one of the specified uncovered events takes place, any ensuing loss which is otherwise covered by the policy will remain covered. The uncovered event itself, however, is never covered." *Id.* at 307 (internal citations omitted). "While coverage may be excluded when a certain peril causes a loss, a resulting or ensuing loss clause[8] operates to carve out an exception to the policy exclusion." *Id.* (footnote added)

---

[8]Whether an insurance policy uses the term "ensuing loss" or "resulting loss" is of no moment. "Resulting loss clauses are sometimes denominated ensuing loss clauses. The distinction is simply a matter of different wording among insurance policies. There is no legal significance to using one phrase over the other." *Vision One*, 276 P.3d at 306 n.6.

This approach is consistent with the reasoning of the Supreme Court of Texas in *Fiess v. State Farm Lloyds*, 202 S.W.3d 744 (Tex. 2006). That court explained the logic of an ensuing loss provision within policy language as follows:

> The [insureds] argue that we must disregard how this policy provision starts ("We do not cover loss caused by mold") because of how it ends ("We do cover ensuing loss caused by water damage"). We disagree; it has again long been the rule that we must read all parts of a policy together, giving meaning to every sentence, clause, and word to avoid rendering any portion inoperative.

*Id.* at 748. As the court in *Fiess* cogently articulated, an ensuing loss provision must not be applied to "make an excluded loss reappear as a covered loss." *Id*. at 752. An ensuing loss provision does not serve to revive coverage for an excluded event. It simply carves out a narrow exception to the exclusion, "limit[ing] the scope of what is otherwise excluded under the policy." *Vision One*, 276 P.3d at 307; *see also Prudential Prop. & Cas. Ins. Co. v. Lillard-Roberts, No. CV-01-0362-ST*, 2002 WL 31488243, at *8 (D. Or. June 14, 2002) (quoting *Cooper*, 184 F.Supp.2d at 964) (holding ensuing loss clause "'does not reinsert coverage for excluded losses, but reaffirms coverage for secondary losses ultimately caused by excluded perils.'").

Upon this Court's evaluation of the ensuing loss provision, we hold that an unambiguous ensuing or resulting loss clause of an exclusion contained in an insurance policy provides a narrow exception to the exclusion but does not revive or reinstate coverage

18

for losses otherwise unambiguously excluded by the policy. Where an uncovered event occurs, an ensuing or resulting loss that is otherwise covered by the policy will remain covered, but the uncovered event itself is not covered.

In the case sub judice, this Court finds the plain and unambiguous terms of the ensuing loss provision provide a narrow exception to the earth movement exclusion and permit coverage for the portion of the loss caused by glass breakage. Thus, pursuant to the unambiguous policy language, to the extent the earth movement results in building glass breakage, such glass breakage is covered; the other damage caused by the earth movement is not covered.[9]

## IV. Conclusion

For the foregoing reasons, this Court reverses the declaratory judgment granted to the Respondents by the circuit court and remands this action with instructions to enter declaratory judgment for the Petitioners on Count III of the complaint.

Reversed and remanded with directions.

---

[9]Erie does not dispute that the policy provides coverage for the Respondents' broken glass; however, the estimate of $3,683.73 for the broken glass does not exceed the Respondents' $10,000 deductible.